


Received
SE...
H.O....

## MISSISSIPPI INSURANCE DEPARTMENT

501 N. WEST STREET, SUITE 1001
WOOLFOLK BUILDING
JACKSON, MISSISSIPPI 39201
www.mid.state.ms.us

MAILING ADDRESS
Post Office Box 79
Jackson, Mississippi 39205-0079
TELEPHONE: (601) 359-3569
FAX: (601) 359-2474
WATS: 1-800-562-2957 (Incoming - USA)

MIKE CHANEY
Commissioner of Insurance
State Fire Marshal

September 26, 2008

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7008 1140 0001 4302 6238

Liberty Mutual Fire Insurance Company
Attn: Secretary
175 Berkeley Street
Boston, MA 02117

In Re: Civil Action No.2008-00,350(2)
Angie Bridges vs Liberty Mutual Fire Insurance Company in the Circuit Court of Jackson County, Mississippi

Dear Sir/Madam:

Please find enclosed copy of summons, complaint, and accompanying pleadings, if any, which were served on this office on September 26, 2008 at 2:40 p.m.

It is requested that immediately upon your receipt of this letter you shall give written acknowledgment of your receipt of same to this office, which shall be in addition to the U. S. Postal Return Receipt which was given at time this article was delivered.

Sincerely,

MIKE CHANEY
COMMISSIONER OF INSURANCE

BY _Carol Parvin_

Carol Parvin
Administrative Assistant and
Legal Process Clerk

MC/cp
Enclosures
pc: The Honorable Joe W. Martin, Jr

# EXHIBIT A

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSISSIPPI

**ANGIE BRIDGES**                                                                  **PLAINTIFFS**

**VS.**                                                           CIVIL ACTION NO.: 2008-00,350(2)

**LIBERTY MUTUAL FIRE INSURANCE COMPANY**                    **DEFENDANT**

### SUMMONS

THE STATE OF MISSISSIPPI

      TO:   **LIBERTY MUTUAL FIRE INSURANCE COMPANY**
             Boston, Massachusetts
             %Mike Chaney, Miss Commissioner of Insurance
             Woolfolk Building
             Jackson, Mississippi

### NOTICE TO DEFENDANT

**THE COMPLAINT ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

      You are required to mail or hand-deliver a copy of your written response to the Complaint to Chuck McRae, the attorney for the Plaintiff, whose street address is 401 East Capital Street, suite 310, Jackson, Mississippi 39205, and whose mailing address is Post Office Box 33, Jackson, Mississippi 39205. Your response must be mailed or delivered within *thirty* (30) days from the date of delivery of this summons and complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint.

      You must also file the original of your response with the Clerk of this court within a reasonable time afterward.

      Issued under my hand and the seal of the Court, this the 2 8 day of August, 2008.

(Seal)                                      JOE W. MARTIN, JR., CIRCUIT CLERK
                                            JACKSON COUNTY, MISSISSIPPI

                                            BY: _Kathy Stone_____

Attachments: Complaint
Interrogatories
Request for Production

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSISSIPPI

FILED

AUG 2 6 2008

JOE W. MARTIN, JR. CLERK
BY K. Stow   D.C.

ANGIE BRIDGES                                          PLAINTIFF

VS.                                        CIVIL ACTION NO.: 2008-00,350(2)

LIBERTY MUTUAL FIRE INSURANCE COMPANY           DEFENDANT

---

## COMPLAINT
## (JURY TRIAL REQUESTED)

Plaintiff, Angie Bridges ("Bridges"), brings the following Complaint against Defendant Liberty Mutual Fire Insurance Company, ("Liberty Mutual"), as follows:

### PARTIES

1.    Plaintiff Angie Bridges is an individual over the age of 18 who is an adult and resides at 2524 Camino Grande street, Gautier, Mississippi 39553-6820.

2.    Defendant, Liberty Mutual Fire Insurance Company at the time of the incident of claim as well as presently is a company with its principal place of business Boston, Massachusetts and conducting business in the State of Mississippi. Nationwide may be served with process by service on its agent for service of process, Mike Chaney, the Mississippi Insurance Commissioner, at the Woolfolk Building, Jackson, Mississippi.

3.    Defendants, John and Jane Does A, B, C, D, and E are individuals, corporations or other entities who caused or contributed to the injuries and damages of the Plaintiff, but whose true identity and/or liability have not been ascertained at this time. These Defendants may include, but not be limited to, Liberty Mutual or any of its companies, representatives or employees of the Liberty Mutual that sold the subject policy of insurance, its agent,  and/or other persons and entities, including but not limited to agents, engineers, or adjusters who are affiliated with the Defendants and/or who have acted in concert with Defendants, and who participated in the torts of those Defendants to such a  degree as to make them individually liable to the Plaintiff under Mississippi law, but whose identities and liability are currently unknown. All allegations and claims asserted herein against "Liberty Mutual", "Defendant" and/or "Defendants" are incorporated herein by reference against John and Jane Does A-H. Said John and Jane Does, when their true identities are known and their liability ascertained, will be identified by name and

joined in this action, if necessary, pursuant to the Mississippi Rules of Civil Procedure.

## VENUE AND JURISDICTION

4.   Jurisdiction and venue are proper in Jackson County, Mississippi as certain activities, injuries, breach of contract, and damages occurred there.  This Court has venue of this action pursuant to Miss. Code Ann. § 11-11-3, because a substantial event that caused or contributed to the injuries and damages of the Plaintiff occurred in Jackson County, Mississippi. This Court has jurisdiction over this action pursuant to Miss. Code Ann. § 9-7-81, *et seq,* because the Plaintiff are seeking damages in excess of the jurisdictional minimum of this Court.

## FACTS

5.      On August 29, 2005, Hurricane Katrina made landfall on the Mississippi Coastline.

6.      At 2524 Camino Grande St., Gautier, Mississippi, the Bridges' residence at the time, the winds were 140-145 MPH with much higher winds likely to have been experienced.

7.      As a result, the Bridges home was experienced damages amounting totaled in excess of the total amount of the policy limits. A copy of the subject policy of insurance is not attached; however, a copy will be attached upon receipt as "Exhibit A". The Libertyguard Deluxe Home-owner's insurance contract was written exclusively by Liberty Mutual and is believed to state that the policy is one of the broadest forms available and provides outstanding value for your insurance dollars. In fact the company always expresses that it is making people live more secure lives.

7.     Liberty Mutual knew that Plaintiff, like many other residents on the Mississippi Gulf Coast, purchased the policy for protection from accidental direct physical loss from hurricanes, winds, tornadoes and other perils. The Liberty Mutual is an "accidental direct physical loss" policy of insurance (known as an "all risk" policy) drafted by the Defendant, Liberty Mutual.

8.      During the time Plaintiff policy was in effect, and during the 1990's, Liberty Mutual requested and received premium rate increases and/or retained risk (deductible) increases for Plaintiffs' policy from the Mississippi Department of Insurance. Said increases were justified by Liberty Mutual by the hurricane risks associated with Coastal properties. Defendant utilized hurricane-specific experience ratings and computer model projections of hurricane losses to corroborate its demands for such rate increases.

9.     During the late 1990's, Liberty Mutual informed the Plaintiff and similarly situated insureds that it had a mandatory modification of the policy, which raised the deductible for hurricane-caused losses covered by the policy. The increased deductible, commonly called the "hurricane deductible," was automatically applied unless the homeowner paid more premium for increased protection in the case of damaged caused by a hurricane. In accordance with the terms of the policy, the Plaintiff, like hundreds of other Liberty Mutual insureds, paid an increased premium to Liberty Mutual to eliminate the larger deductible so the policy would provide increased protection for hurricane damage. The Plaintiff's action in paying the increased premium was based on Liberty Mutual's representation that elimination of the hurricane deductible would increase their coverage and decrease their retained risk (deductible) and exposure in the case of damage from a hurricane.

10.    The subject policy was underwritten, marketed, sold, and issued to Plaintiff by Liberty Mutual, which acted by, through, and/or in conjunction with, its agents. In selling the subject policy of insurance to the Plaintiff, and collecting premiums under the policy, Liberty Mutual, by and through its agents, expressly and impliedly represented to Plaintiff that she would have full and comprehensive coverage for any and all accidental direct physical losses, including those resulting from hurricanes, and including any and all damage proximately, efficiently, and typically caused by hurricanes, including but not limited to damage caused by hurricane driven winds.

11.    Based upon the representations of coverage made by Liberty Mutual and its agents, and the express and implicit policy coverage, the Plaintiff reasonably relied upon said representations and purchased the subject policy of insurance from Liberty Mutual, with a reasonable expectation and understanding that Liberty Mutual would pay for all losses caused by hurricanes or wind. Liberty Mutual intended for the Plaintiff to rely upon the representations that they would be covered for Hurricanes or wind damages, and to accept and pay higher premiums and/or deductible based upon that reliance. The Plaintiff reasonably relied upon said representations and purchased, agreed to pay and did pay an increased premium for the subject policy of insurance from Liberty Mutual, with a reasonable expectation and understanding that Liberty Mutual would pay for all losses caused by hurricanes or winds. .   On or about August 29, 2005, within the subject policy period, the Plaintiff's home and personal property therein destroyed by an accidental direct physical loss caused by winds, tornadoes and/ cells containing

microburst, or Hurricane Katrina. The accidental direct physical loss to the Plaintiff's dwelling and property was caused by wind. Such loss triggered all separate coverages under Plaintiff's contract with Liberty Mutual in accordance with Mississippi law.

13.   The Plaintiff properly and promptly reported the total loss of her insured property to Liberty Mutual. The Plaintiff paid all the premiums due under the subject policy of insurance, and has performed all their obligations with regard to the subject claim.

14.   Liberty Mutual claims representatives have reviewed the property; however, only did a cursory review and recklessly failed to properly adjust the loss.

15.    Liberty Mutual intentionally led the Plaintiff to believe, during the time her homeowners' claim was being adjusted, that it was acting in accordance with its obligation to conduct a good faith investigation before finally determining its liability to the Plaintiff under the policy of insurance. Unbeknownst to the Plaintiff, and concealed from the Plaintiff and other Liberty Mutual insureds, Liberty Mutual embarked during the period after August 29, 2005, and thereafter, on a calculated course of corporate conduct designed to deny Plaintiff's claim, and the claims of all Mississippi Gulf Coast homeowners.

16.    After assessing the magnitude of the Liberty Mutual -insured Katrina losses, the Defendant intentionally and deliberately set forth on a course of action, concealed from the Plaintiff and other homeowners, designed to reduce the company's exposure for losses by abandoning its duty to fully investigate individual Katrina "claims" and by issuing across the board denials, damage caused by flooding, or "low balling" the loss.

17.    Liberty Mutual adopted claims handling procedures for the hurricane to be "used for determination of coverage" in Mississippi Katrina claims where damage was sustained by a combination of wind and water and to ignore the all risk provision.

18.   The coverage provisions of the Liberty Mutual wind/water procedure were not supported by the terms of the Liberty Mutual contract or Mississippi law. The procedures were intentionally designed to result in denials of legitimate claims, including the Plaintiff's, and to save Liberty Mutual from the magnitude of payments that were rightfully due Plaintiff and others under the policy.

19.   Liberty Mutual's actions, concealed not only from its policyholders but also from the Mississippi Department of Insurance, were designed to, and did in effect shift the burden of establishing the cause of the accidental direct physical loss under the Defendant's all risk policy

from the Company to the policyholder.

20.   Liberty Mutual, knowing that it had the opportunity and the obligation under Plaintiff's contract of insurance, and under applicable law, to have Plaintiff's claim evaluated properly, intentionally abandoned its obligation, and surrendered said right by denying the Plaintiff's claims.

21.   The action of the Defendant Liberty Mutual with regard to investigation of the cause of the loss incurred by the Plaintiff was intentional, deliberate conduct accompanied by fraud or deceit as alleged specifically herein.

22.   The action of Liberty Mutual, on information and belief, was motivated, in part, by Liberty Mutual's desire to save money on claims in violation of its duties to the Plaintiff and similarly situated Liberty Mutual homeowners.

23.   At the time during which Plaintiff was being advised by Liberty Mutual that Liberty Mutual was "working on her claim and investigating", Liberty Mutual already had adopted procedures which required denial of the claims.

24.   Pursuant to the terms of its contract of insurance and Mississippi law, Liberty Mutual was obligated to pay Plaintiff's claims unless it established that the losses were specifically excluded.

25.   Since Liberty Mutual did not meet that burden, its denial of all benefits is contrary to Mississippi law.

26.   Liberty Mutual had the opportunity to prove what part of the loss, if any, would not have occurred, but chose not to do so, opting instead to adopt a course of conduct which was designed to wrongfully benefit the company at the expense of the Plaintiff and others.

## CAUSES OF ACTION

In support of the following claims for relief, Plaintiff hereby refers to, re-alleges, and incorporates by reference, in each of the following causes of action, each and every paragraph of the facts supporting these claims, as set forth above and below.

## BREACH OF CONTRACT

27.   The loss the plaintiff sustained as a result of Hurricane Katrina was an accidental direct physical loss for which coverage is provided in the Liberty Mutual policy of insurance under Mississippi law.

28.     As provided by the law in the State of Mississippi, once the Plaintiff provided to Liberty Mutual evidence of the accidental physical loss, it became Liberty Mutual's burden to prove what part, if any, of the loss was excluded under the terms of the all-risk policy.

29.     Liberty Mutual has not and cannot sustain its burden of proof because the Plaintiff's loss was caused by a hurricane wind. Moreover, Liberty Mutual concluded neighboring homes sustained hurricane wind loss. Liberty Mutual ignored evidence of Hurricane Katrina's straight-line winds, tornados, severe thunderstorm cells, and air-borne missiles in the neighborhood and vicinity of the Plaintiff's home.

30.     By issuing the subject policy to the Plaintiff, and accepting premium payments from her, Liberty Mutual contractually agreed to pay for losses covered by the policy under Mississippi law. Liberty Mutual refused to pay this legitimate claim, and thus breached its contract of insurance with the Plaintiff. Liberty Mutual is liable to the Plaintiff for breach of contract and owes the Plaintiff damages under the terms of the contract of insurance and Mississippi law, together with pre and post judgment interest from 30 days after the loss on said amounts for delay in paying the same.

## WAIVER AND ESTOPPEL

31.     Liberty Mutual had an obligation to establish what, if any, part of the loss fell under the terms of its policy exclusion(s). The only adjuster who inspected the Plaintiff's property opined there was evidence of wind damage. Liberty Mutual intentionally abandoning its obligation to establish what, if any, part of the loss was caused by an excluded peril after admitting there was evidence of wind damage. Liberty Mutual, waived its right to exclude any part of the loss.

32.     Liberty Mutual's actions in issuing its denials in the Plaintiff's case, in light of the acts and omissions discussed above, constitute a waiver of its right to litigate whether portions of the loss are excluded.

33.     Liberty Mutual induced the Plaintiff to rely on its good faith handling of her claims when it represented to the Plaintiff that and told her not to let this disaster worry her any further, and assured her that he was going to take care of everything, and that the Plaintiff was going to be ok. However, at the time of Liberty Mutual's representations that Liberty Mutual was going to take care of everything, Liberty Mutual had already adopted its undisclosed and unsupported wind / water procedures by which coverage under the homeowners' policy was to be blanket

denied in situations like the Plaintiff's. Liberty Mutual fraudulently concealed said fact and fraudulently induced the Plaintiff to act to the detriment of her substantial homeowners claim. Liberty Mutual should be estopped from denying that is owes full coverage under her homeowners policy of insurance to the Plaintiff and all similarly situated Liberty Mutual insureds.

## TORT OF OUTRAGE

34.    Liberty Mutual and the other defendants claimed that the damages were caused by water when a request and assurances had been given that the Plaintiffs had coverage for a hurricane loss under the policy. Said actions by the defendants are a tort of outrage and should be estopped from asserting their denial position.


## NEGLIGENCE / GROSS NEGLIGENCE / FAILURE TO INVESTIGATE

35. Liberty Mutual had a duty under the subject policy of insurance to fully investigate the claims of its insureds such as the Plaintiff arising from Winds and Hurricane Katrina, and to pay the Plaintiff for covered losses. Liberty Mutual's duties under the subject policy of insurance included, but were not limited to the duty to:

a.    Train agents to properly execute and explain policies and properly advise their insureds, and to train adjusters, engineers and other claims personnel to accurately investigate and determine the causation of losses suffered by Liberty Mutual's insureds, and to correctly apply the subject policy of insurance to the facts of particular losses, including the Plaintiff's, or hire competent, qualified professionals to perform its investigation;

b.    Have competent adjusters, or other qualified professionals perform a detailed inspection of the Plaintiff's damages and losses, in a timely and professional manner;

c.    Complete its investigation, and pay the Plaintiff for her covered losses, within a reasonable amount of time;

d. Pay the Plaintiff for her losses and damages covered under the insurance policy;

e.    Resolve any and all ambiguities in the subject policy of insurance in favor of coverage for Liberty Mutual's insureds, including the Plaintiff;

f.    Prove facts supporting, and the applicability of, any exclusion to coverage before excluding coverage for the Plaintiff's losses caused by Hurricane Katrina;

g.    The duty, implicit within every policy of insurance in the State of Mississippi, to treat the Plaintiff, with good faith and fair dealing as established in 1976 ; and

h. Other duties to be shown at the trial of this matter.

36.    Liberty Mutual negligently, grossly negligently, and/or with reckless disregard for the rights of the Plaintiff, breached each of the duties outlined above.

## TORTIOUS, BAD FAITH, AND CONTINUING BREACH OF CONTRACT

37.    The actions of Liberty Mutual and the defendants in denying the Plaintiff's claims were part of a fraudulent and deceptive scheme, deliberately devised, and intentionally implemented by Liberty Mutual after Hurricane Katrina at the expense of the Plaintiff and similarly situated insureds.  Said actions constitute an intentional, wrongful, and tortuous act.

38.    Nationwide intentionally embarked on a corporate course of conduct of fraud and deceit designed to wrongfully deny the Plaintiffs, and other similarly situated policyholders, from receiving the benefits to which they were entitled under Liberty Mutual's homeowners' policy(s). The actions of Liberty Mutual were intentional wrongs, and/or were committed with reckless disregard for the rights of the Plaintiff; and rise to the level of independent torts. Liberty Mutual's conduct constitutes the tort of "bad faith", or tortuous breach of contract, under Mississippi law.

48. A proper investigation of the Plaintiff's claim by Liberty Mutual and its agents and representatives would have adduced evidence showing that the denial of the claim was without merit. Liberty Mutual intentionally and deliberately abandoned its duty to conduct a thorough investigation, ignored the opinions of others who actually inspected the property, in violation of its obligation to conduct a good faith investigation before a final denial of coverage and liability.

49. Liberty Mutual negligently, grossly negligently, intentionally, and/or with reckless disregard for the rights of the Plaintiff, sought to interpret its own policy of insurance contrary to the actual terms and conditions thereof; contrary to Nationwide's express and/or implicit representations that coverage would be provided for losses caused by hurricanes in exchange for additional consideration; and contrary to Mississippi public policy, all to the benefit of Liberty Mutual and to the detriment of the Plaintiff and similarly situated insureds. Liberty Mutual, while ignoring evidence of hurricane wind damage denied coverages for losses caused by wind and hurricane Katrina with no proof, without performing an adequate investigation to prove what, if any

damage were excluded. Moreover, Liberty Mutual denied coverage for damage alleged caused by "storm surge" when the subject policy of insurance did not include the separate and distinct peril of "storm surge" as a peril it intended to attempt to exclude, even though the industry, and other companies doing business in Mississippi, recognized that "storm surge" is an independent peril which must be specifically named to be excluded.

50.    Liberty Mutual, by and through its agents and employees, refused to pay for the plaintiff's' covered losses caused by wind and/or Hurricane Katrina without a legitimate, arguable, or reasonable basis. Liberty Mutual's breach of its duties under the subject policy of insurance, and other acts and omissions of Nationwide addressed throughout this Complaint, constitute a bad faith breach of Liberty Mutual's duties and obligations to the Plaintiff under the subject policy of insurance, as well as a bad faith breach of Liberty Mutual's implicit duty to treat its policyholders with good faith and fair dealing. Nationwide's bad faith conduct is continuing, as Nationwide continues to deny coverage to the Plaintiff despite the fact it never obtained evidence to support its denial of the Plaintiff's claim for losses caused by the accidental direct physical loss that was Hurricane Katrina. The actions of Liberty Mutual as alleged above constitute a violation of the implied covenant of good faith and fair dealing implicit in every contract of insurance, and bad faith breach of contract; and include post-litigation violations of its duties of good faith.

## FRAUDULENT CLAIMS PRACTICES

51.    The massive number of Liberty Mutual insured homes destroyed or partially destroyed by wind and /or Hurricane Katrina left Liberty Mutual facing huge losses after Hurricane Katrina. Liberty Mutual made an initial assessment of the magnitude of the loss. Liberty Mutual then conceived and instituted a fraudulent course of claims practices to be applied. The claim of the Plaintiff, and the claims of hundreds of other Liberty Mutual insureds whose homes were rendered totaled loss by Hurricane Katrina, were wrongfully denied pursuant to Liberty Mutual's Katrina specific "top down" scheme of fraudulent and deceptive claims practices.

52.    The scheme included employment by Liberty Mutual of improper, vague, or absent engineering procedures, which were fraudulently concealed from the Plaintiff and other homeowners who were expecting and relying on good faith handling of their claims with Liberty Mutual.

53.    The actions of Liberty Mutual constitute a deliberate course of company-wide fraudulent

post wind and/or Hurricane Katrina claims handling practices by which Liberty Mutual
recklessly and without regard to its insureds, undertook to defraud the Plaintiff and other
similarly situated Liberty Mutual insured homeowners.

54. Said actions by Liberty Mutual constitute fraud, fraudulent concealment, and fraudulent
inducement, as well as bad faith claims handling on an institutional basis in the handling by
Liberty Mutual of Katrina claims. The actions by Liberty Mutual were intended to, and did,
result in the intentional and fraudulent denial of the claims of the Plaintiff and others whose
homes were completely destroyed by Hurricane Katrina.

## FRAUD, FRAUDULENT INDUCEMENT

55. Liberty Mutual induced the Plaintiff, and other insureds in the coastal counties of
Mississippi, to purchase homeowners insurance from Liberty Mutual; to agree to a higher
deductible and/or higher premiums; to pay premiums to Liberty Mutual; and to not seek to place
their insurance business with other insurance companies; based upon the express and implicit
representations that the Plaintiff, and other insureds in Mississippi, were purchasing coverage for
losses caused by wind and hurricanes. At the time that Liberty Mutual sold the subject policy of
insurance to the Plaintiff, accepted premiums for said policy, and required the Plaintiff to pay
higher premiums for hurricane coverage or accept a higher deductible for hurricane coverage,
Nationwide (1) made express and implied representations that the Plaintiff was purchasing
coverage for hurricanes, (2) made express and implied representations that it would use
competent professionals to investigate and adjust hurricane claims in an unbiased and fair
manner, (3) made express and implied representations that it would adjust and pay the Plaintiff
claims in a fair and timely manner, and in a manner consistent with the way all other hurricane
claims in Mississippi were handled, and (4) made express and implied representations that
Liberty Mutual would not deny coverage for an accidental physical loss in absence of reasonable
proof that the loss was caused by an excluded loss, as set forth in the "losses not insured"
section of the policy Liberty Mutual sold to the Plaintiff. Liberty Mutual made these implied
and/or express representations to the Plaintiff with the intention that the Plaintiff would rely upon
the representations, would pay premiums to Liberty Mutual, and would not purchase coverage
from other insurance carriers to secure coverage for their property against potential hurricane
losses. The Plaintiff relied on Liberty Mutual's express and/or implied representations, and the
Plaintiff purchased the subject insurance policy from Nationwide instead of placing her insurance

with another carrier, and paid premiums thereon, in reliance on those representations.

56. Liberty Mutual's representations to the Plaintiff, set out in the preceding paragraph, were false, and Liberty Mutual either knew they were false, and recklessly misrepresented the true facts by not making any effort to ensure that the representations would be complied with in the event of a catastrophic winds and a hurricane such as Katrina. Liberty Mutual's acts and omissions, as set forth in all the preceding paragraphs, were contrary to the representations on which the Plaintiff relied in purchasing the policy, and inured to the benefit and financial gain of Liberty Mutual, which still has not paid the Plaintiff's legitimate claim, and to the detriment of the Plaintiff.

**DAMAGES**

57. As the proximate result of the aforesaid wrongful conduct of Liberty Mutual and the other defendants, set forth in all of the preceding paragraphs which are fully incorporated herein, the Plaintiff has suffered actual contract damages under the contract of homeowners insurance, as stated above, as well as other benefits that were due under the terms of the insurance policy. As a further proximate result of Liberty Mutual's breach of its duties under the subject policy of insurance, pattern and practice of deceptive conduct, and the other acts and omissions of Defendants, as described in all of the preceding paragraphs, the Plaintiff suffered the damages discussed throughout this Complaint, including but not limited to loss of insurance premiums, severe mental and emotional distress, anxiety, worry, personal financial expenses, incurred attorney fees, expert expenses and other incidental damages all to the Plaintiff's general damage, all of which were foreseeable to Liberty Mutual and the other defendants at the time of, and in the event of the acts and omissions discussed in the preceding paragraphs.

58. As the proximate result of the aforesaid wrongful conduct of Liberty Mutual, set forth in all of the preceding paragraphs which are fully incorporated herein, the Plaintiff has also been forced to hire attorneys and incur substantial time and expense in pursuing this civil action to compel Liberty Mutual to pay the benefits due to the Plaintiff under the policy. Delay in payment of claims is an integral, and for Liberty Mutual profitable, part of the scheme of fraudulent, tortuous, and bad faith claims practices giving rise to this suit. Said delay, intended by Liberty Mutual, has exacerbated the extra-contractual damages suffered and incurred by the Plaintiff, for all of which damages should be awarded in this action.

59. Some or all of the acts and omissions of Defendants described in all of the preceding

paragraphs, which are fully incorporated herein, were grossly negligent; and/or were attended by circumstances of misrepresentations of material facts; reckless conduct; and/or were committed with gross, reckless, and /or callous disregard for the rights of the Plaintiff. As such, the Plaintiff is entitled to an award of punitive damages from and against Defendant, in an amount sufficient to punish Liberty Mutual for its wrongdoings, and to deter the Defendant, and others similarly situated from committing similar outrageous acts in the future.

60. The acts and omissions of Liberty Mutual and the other defendants further justify the imposition of consequential damages and attorneys' fees, in addition to punitive damages.

61. WHEREFORE PREMISIES CONSIDERED, Plaintiff demands judgment from and against the Defendants for actual and compensatory damages in the amount of contract damages due under the policy of insurance, and for extra-contractual damages in an amount sufficient to compensate the Plaintiff for the anxiety, worry, mental and emotional distress, lost time, personal expenses and other incidental and consequential damages they have suffered as a result of Liberty Mutual's conduct, plus consequential damages they have suffered as a result of Liberty Mutual's conduct, including attorneys' fees and expenses incurred in the prosecution of this claim, plus pre-judgment interest from the date of the losses, and post-judgment interest in the amount allowed by law, but not less that 8% per annum. Plaintiff further pray that punitive damages be assessed against the Defendants in an amount sufficient to punish the defendants for their wrongful conduct, and to deter like conduct in the future, and to serve as an example and a warning to others, so as to deter other insurance companies from engaging in a similar course of conduct. Plaintiffs further pray for any and all additional relief, in favor of the Plaintiff, deemed appropriate by this Honorable Court.

> This the 26th day of August, 2008.
>
> Angie Bridges, plaintiff
>
> *Chuck McRae*
>
> Chuck McRae (MB#2804)
> Attorney for Plaintiffs

Chuck McRae, Esq.
P. O. Box 33
Jackson, MS 39205
Tel: (601) 906-1008
Fax: (866) 236-773

LIBERTYGUARD DELUXE HOMEOWNERS POLICY DECLARATIONS          ENDORSEMENT 01
LIBERTY MUTUAL FIRE INSURANCE COMPANY
BOSTON, MASSACHUSETTS

POLICY NUMBER
H32-251-061345-605 9    THESE DECLARATIONS EFFECTIVE  07/20/05

NAMED INSURED AND MAILING ADDRESS                 RESIDENCE PREMISES INSURED:
ANGIE BRIDGES                                      SAME AS MAIL ADDRESS
2524 CAMINO GRANDE ST
GAUTIER MS 39553-6820

                                      FOR SERVICE CALL OR WRITE:
POLICY PERIOD: 07/20/05 TO 07/20/06    PO BOX 52102
12:01AM STANDARD TIME AT THE           PHOENIX AZ 85072
RESIDENCE PREMISES

AGENT: ALAN KUHN                       800-869-4009/480-778-5631
(228) 497-0002                         CLAIMS: 800-225-2467

CHANGES MADE:  MORTGAGEE CHANGED

ADDITIONAL PREMIUM DUE FOR THIS CHANGE: NONE

SECTION I AND II: COVERAGES AND LIMITS UNDER YOUR LIBERTYGUARD HOMEOWNERS POLICY
   I: COVERAGE A - YOUR DWELLING WITH EXPANDED REPLACEMENT COST          $79,100
      COVERAGE B - OTHER STRUCTURES ON RESIDENCE PREMISES                 $7,910
      COVERAGE C - PERSONAL PROPERTY WITH REPLACEMENT COST               $59,325
      COVERAGE D - LOSS OF USE OF YOUR RESIDENCE PREMISES    ACTUAL LOSS SUSTAINED
  II: COVERAGE E - PERSONAL LIABILITY (EACH OCCURRENCE)                 $300,000
      COVERAGE F - MEDICAL PAYMENTS TO OTHERS (EACH PERSON)               $1,000

DEDUCTIBLE: LOSSES COVERED UNDER SECTION I ARE SUBJECT TO A DEDUCTIBLE OF $500

PREMIUM SUMMARY:   FORMS AND ENDORSEMENTS SHOWN ARE MADE PART OF YOUR POLICY
   HO 00 03 04 91  BASE COST FOR THE COVERAGES AND LIMITS SHOWN ABOVE    $ 1725
   HO 04 53 04 91  CREDIT CARD FORGERY MONEY  ($ 5000)                   $    3
   FMHO-1183       HOME PROTECTOR PLUS                                   $  121

   SECTION II COVERAGES EXTENDED:
   HO 24 82 04 91  PERSONAL INJURY                                       $    9
                   COVERAGE E INCREASED LIMIT                            $   10
   PREFERRED RISK RATING PLAN DISCOUNTS:      9%
      6% INSURANCE TO VALUE CREDIT                                      -$  104
      3% INFLATION PROTECTION CREDIT                                    -$   52
   PROTECTIVE DEVICE CREDITS:     12%                                   -$  207
      SMOKE DETECTOR                  FIRE EXTINGUISHER & DEAD BOLT
      CENTRAL STATION BURGLAR ALARM
   MULTIPLE POLICY DISCOUNT  10%                                        -$  173
   SAFE HOMEOWNER PROGRAM                                               -$  259

NET PREMIUM                                                   $    1,073

FMHO 775 R3                              COUNTERSIGNED 12/12/05

Dexter R. Legg                Edward F Kelly
SECRETARY                     PRESIDENT

                                      S. A. McKinley

LIBERTYGUARD DELUXE HOMEOWNERS POLICY DECLARATIONS      ENDORSEMENT 01
LIBERTY MUTUAL FIRE INSURANCE COMPANY
BOSTON, MASSACHUSETTS                                    PAGE 02

POLICY NUMBER
H32-251-061345-605  9      THESE DECLARATIONS EFFECTIVE  07/20/05
NAMED INSURED AND MAILING ADDRESS
ANGIE BRIDGES                         RESIDENCE PREMISES INSURED:
2524 CAMINO GRANDE ST                 SAME AS MAIL ADDRESS
GAUTIER MS 39553-6820

                                      FOR SERVICE CALL OR WRITE:
POLICY PERIOD: 07/20/05 TO 07/20/06       PO BOX 52102
12:01AM STANDARD TIME AT THE              PHOENIX AZ 85072
RESIDENCE PREMISES

AGENT: ALAN KUHN                      800-869-4009/480-778-5631
(228) 497-0002                        CLAIMS: 800-225-2467

                (CONTINUED FROM PREVIOUS PAGE)
OTHER ENDORSEMENTS MADE PART OF YOUR POLICY:
2344             LMHC MEMBERSHIP            HO 04 96 04 91 NO SECII/LIMIT I-DAYCARE
HO 01 23 10 94 SPECIAL PROVISIONS          FMHO-976 05/92 LEAD POISONING EXCLUSION
FMHO-2493 5/03 AMENDATORY ENDORSEMENT      FMHO-2399      AMENDATORY MOLD END
FMHO-2265      AMENDATORY SEEPAGE END       FMHO-1097 1/97 UNDERGROUND FUEL STORAGE
FMHO-1087 2/96 WAIVER OF DED-THEFT          FMHO-2835      INFLATION PROTECTION
HO 04 16 04 91 PROTECTIVE DEVICES          HO 04 94 04 91 WINDSTORM OR HAIL EXCLUS
FMHO-2934 7/04 AMENDMT POL DEFINITIONS

SPECIAL MESSAGES:  THESE DECLARATIONS ARE MADE PART OF THE POLICY NUMBER
                   SHOWN ABOVE AND REPLACE ANY PREVIOUS DECLARATIONS

    MORTGAGEE 1:                      MORTGAGEE 2:
    EMC MORTGAGE CORP ISAOA           HANCOCK BANK
    LN 0005300629                     LN 2005515671
    PO BOX 7589                       PO BOX 4020
    SPRINGFIELD OH 45501              GULFPORT MS 39502

HANDLING REQUIREMENTS:  DECLARATION TO MORTGAGEE
   BILL TO MORTGAGEE    FUTURE BILLS TO MORTGAGEE

FMHO 775 R3                                COUNTERSIGNED 12/12/05

Dexter R. Legg            Edmund F Kelly
SECRETARY                 PRESIDENT

                                  S. A. McKinley
                          AUTHORIZED REPRESENTATIVE

LIBERTYGUARD DELUXE HOMEOWNERS POLICY DECLARATIONS    ENDORSEMENT 01
LIBERTY MUTUAL FIRE INSURANCE COMPANY
BOSTON, MASSACHUSETTS    PAGE 03

POLICY NUMBER

| H32-251-061345-605  9 | THESE DECLARATIONS EFFECTIVE | 07/20/05 |

NAMED INSURED AND MAILING ADDRESS
ANGIE BRIDGES
2524 CAMINO GRANDE ST
GAUTIER MS 39553-6820

RESIDENCE PREMISES INSURED:
SAME AS MAIL ADDRESS

POLICY PERIOD: 07/20/05 TO 07/20/06
12:01AM STANDARD TIME AT THE
RESIDENCE PREMISES

AGENT: ALAN KUHN
(228) 497-0002

FOR SERVICE CALL OR WRITE:
PO BOX 52102
PHOENIX AZ 85072

800-869-4009/480-778-5631
CLAIMS: 800-225-2467

(CONTINUED FROM PREVIOUS PAGE)

FMHO 775 R3  COUNTERSIGNED   12/13/05  PREMIUM: 476HS81359      AGT NUM: 670831  AGT OFF: N OR DIST CHAN: 002 APT  CAP FACT: .931

| STATE | SFA M APIS | COVERAGE A-C | CONST | COUNTS | TERR | PREM M CAP | PROT | S | STORAGE | FIRE DIST | PGP | YR BUILT | UND HANDLING | CREDIT | WR | ISI YR | RISK STP | RATE DIFF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23 | 001 | | 02 | 030 | 006 | 000 | 06 | 0 | B | A | N | 75 | 00 | | 2 | 86 | 3990 | 694 |

Rated As:    GAUTIER

SHP   00000   MAILING  00   PLAN 91
08

PROT DEV-   581   TAX TERR-   9999
TIER 05

LMLC276RIS

LIBERTYGUARD DELUXE HOMEOWNERS POLICY DECLARATIONS
LIBERTY MUTUAL FIRE INSURANCE COMPANY
BOSTON, MASSACHUSETTS

RENEWAL

POLICY NUMBER
H32-251-061345-605 9   THESE DECLARATIONS EFFECTIVE  07/20/05

NAMED INSURED AND MAILING ADDRESS
ANGIE BRIDGES
2524 CAMINO GRANDE ST
GAUTIER MS 39553-6820

RESIDENCE PREMISES INSURED:
SAME AS MAIL ADDRESS

POLICY PERIOD: 07/20/05 TO 07/20/06
12:01AM STANDARD TIME AT THE
RESIDENCE PREMISES

AGENT:  ALAN KUHN
(228) 497-0002

FOR SERVICE CALL OR WRITE:
PO BOX 52102
PHOENIX AZ 85072

800-869-4009/480-778-5631
CLAIMS: 800-225-2467

SECTION I AND II: COVERAGES AND LIMITS UNDER YOUR LIBERTYGUARD HOMEOWNERS POLICY
```
  I:COVERAGE A - YOUR DWELLING WITH EXPANDED REPLACEMENT COST          $79,100
    COVERAGE B - OTHER STRUCTURES ON RESIDENCE PREMISES                $7,910
    COVERAGE C - PERSONAL PROPERTY WITH REPLACEMENT COST              $59,325
    COVERAGE D - LOSS OF USE OF YOUR RESIDENCE PREMISES       ACTUAL LOSS SUSTAINED
 II:COVERAGE E - PERSONAL LIABILITY (EACH OCCURRENCE)                $300,000
    COVERAGE F - MEDICAL PAYMENTS TO OTHERS (EACH PERSON)              $1,000
```

DEDUCTIBLE: LOSSES COVERED UNDER SECTION I ARE SUBJECT TO A DEDUCTIBLE OF $500

```
PREMIUM SUMMARY:   FORMS AND ENDORSEMENTS SHOWN ARE MADE PART OF YOUR POLICY
  HO 00 03 04 91   BASE COST FOR THE COVERAGES AND LIMITS SHOWN ABOVE    $ 1725
  HO 04 53 04 91   CREDIT CARD FORGERY MONEY  ($ 5000)                   $    3
  FMHO-1183        HOME PROTECTOR PLUS                                   $  121

  SECTION II COVERAGES EXTENDED:
  HO 24 82 04 91   PERSONAL INJURY                                      $    9
                   COVERAGE E INCREASED LIMIT                           $   10
  PREFERRED RISK RATING PLAN DISCOUNTS:       9%
     6% INSURANCE TO VALUE CREDIT                                     -$  104
     3% INFLATION PROTECTION CREDIT                                   -$   52
  PROTECTIVE DEVICE CREDITS:     12%                                  -$  207
    SMOKE DETECTOR                          FIRE EXTINGUISHER & DEAD BOLT
    CENTRAL STATION BURGLAR ALARM
  MULTIPLE POLICY DISCOUNT  10%                                       -$  173
  SAFE HOMEOWNER PROGRAM                                              -$  259

  NET PREMIUM                                                  $     1,073
```

FMHO 775 R3

COUNTERSIGNED 06/07/05

Dexter P. Legg
SECRETARY

Edmund F Kelly
PRESIDENT

S. A. McKinley

LIBERTYGUARD DELUXE HOMEOWNERS POLICY DECLARATIONS
LIBERTY MUTUAL FIRE INSURANCE COMPANY
BOSTON, MASSACHUSETTS

RENEWAL

PAGE 02

POLICY NUMBER
H32-251-061345-605  9

THESE DECLARATIONS EFFECTIVE  07/20/05

NAMED INSURED AND MAILING ADDRESS
ANGIE BRIDGES
2524 CAMINO GRANDE ST
GAUTIER MS 39553-6820

RESIDENCE PREMISES INSURED:
SAME AS MAIL ADDRESS

POLICY PERIOD: 07/20/05 TO 07/20/06
12:01AM STANDARD TIME AT THE
RESIDENCE PREMISES

AGENT: ALAN KUHN
(228) 497-0002

FOR SERVICE CALL OR WRITE:
PO BOX 52102
PHOENIX AZ 85072

800-869-4009/480-778-5631
CLAIMS: 800-225-2467

(CONTINUED FROM PREVIOUS PAGE)

OTHER ENDORSEMENTS MADE PART OF YOUR POLICY:

| | | | |
|---|---|---|---|
| 2344 | LMHC MEMBERSHIP | HO 04 96 04 91 | NO SECII/LIMIT I-DAYCARE |
| HO 01 23 10 94 | SPECIAL PROVISIONS | FMHO-976 05/92 | LEAD POISONING EXCLUSION |
| FMHO-2493 5/03 | AMENDATORY ENDORSEMENT | FMHO-2399 | AMENDATORY MOLD END |
| FMHO-2265 | AMENDATORY SEEPAGE END | FMHO-1097 1/97 | UNDERGROUND FUEL STORAGE |
| FMHO-1087 2/96 | WAIVER OF DED-THEFT | FMHO-2835 | INFLATION PROTECTION |
| HO 04 16 04 91 | PROTECTIVE DEVICES | HO 04 94 04 91 | WINDSTORM OR HAIL EXCLUS |
| FMHO-2934 7/04 | AMENDMT POL DEFINITIONS | | |

MORTGAGEE 1:
EMC MORTGAGE CORP AND DEERE
CREDIT ISAOA LN 5300629
PO BOX 25320
SANTA ANA CA 92799

MORTGAGEE 2:
HANCOCK BANK
LN 2005515671
PO BOX 4020
GULFPORT MS 39502

HANDLING REQUIREMENTS: DECLARATION TO MORTGAGEE
BILL TO MORTGAGEE    FUTURE BILLS TO MORTGAGEE

FMHO 775 R1

COUNTERSIGNED 06/07/05

SECRETARY          PRESIDENT

LIBERTYGUARD DELUXE HOMEOWNERS POLICY DECLARATIONS

LIBERTY MUTUAL FIRE INSURANCE COMPANY

BOSTON, MASSACHUSETTS

RENEWAL

PAGE 03

POLICY NUMBER
H32-251-061345-605 9    THESE DECLARATIONS EFFECTIVE 07/20/05

NAMED INSURED AND MAILING ADDRESS
ANGIE BRIDGES
2524 CAMINO GRANDE ST
GAUTIER MS 39553-6820

RESIDENCE PREMISES INSURED:
SAME AS MAIL ADDRESS

POLICY PERIOD: 07/20/05 TO 07/20/06
12:01AM STANDARD TIME AT THE
RESIDENCE PREMISES

AGENT: ALAN KUHN
(228) 497-0002

FOR SERVICE CALL OR WRITE:
PO BOX 52102
PHOENIX AZ 85072

800-869-4009/480-778-5631
CLAIMS: 800-225-2467

(CONTINUED FROM PREVIOUS PAGE)

FMHO 775 R3  COUNTERSIGNED    06/07/05  PRU NUM: 416H581359     AGT NUM: 670821   AGT OFF: N OR REF NUM: 002  CAP FACT: .931

| STATE | TERRITORY | INSURANCE AG | CONST | COUNTY | HURR | PREM SEGMENT | PROT | S | HURRICANE | FORM DEPT | PEP | EN BUILT | USED HANDLING | CREDIT | MIR | DISCNT | POLICY PEP | WRITTEN BY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23 | 001 | | 03 | 630 | 006 | 000 | 06 | 0 | B | A | N | 75 | 00 | | 3 | 86 | 3990 | 694 |

Rated As:    GAUTIER

PROT DEV:    581    TAX TERR:    9999

TIER 05

SKP    00000

LMTW411RIS

MAILING 00    PLAN 91
08



# LibertyGuard

## Deluxe Homeowners Policy

**Please read your policy and each endorsement carefully.**

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States and Canada. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NON ASSESSABLE**

Liberty Mutual Group

FMHO 943 (ED. 11-96)                                           PF

# LIBERTYGUARD DELUXE HOMEOWNERS POLICY

## HO 00 03 EDITION 04 91

### TABLE OF CONTENTS

**Page**

Agreement..............................................................1
Definitions............................................................1
SECTION I - PROPERTY COVERAGES
  Coverage A Dwelling.........................................1
  Coverage B Other Structures............................2
  Coverage C Personal Property...........................2
  Coverage D Loss of Use....................................3
  Additional Coverages.......................................3
    Debris Removal.........................................3-4
    Reasonable Repairs....................................4
    Trees, Shrubs and Other Plants...............4
    Fire Department Service Charge..............4
    Property Removed.....................................4
    Credit Card, Fund Transfer Card, Forgery
      and Counterfeit Money....................4
    Loss Assessment.....................................4-5
    Collapse.......................................................5
    Glass or Safety Glazing Material..............5
    Landlord's Furnishings...........................5-6
SECTION I - PERILS INSURED AGAINST
  Coverage A Dwelling and Coverage B
    Other Structures......................................6
  Coverage C Personal Property.................6-7
SECTION I - EXCLUSIONS
  Ordinance or Law...........................................7
  Earth Movement..........................................7-8
  Water Damage.................................................8
  Power Failure..................................................8
  Neglect ...........................................................8
  War...................................................................8
  Nuclear Hazard...............................................8
  Intentional Loss..............................................8
  Weather Conditions........................................8
  Acts or Decisions............................................8
  Faulty, Inadequate or Defective....................8
SECTION I - CONDITIONS
  Insurable Interest and Limit of Liability......8
  Your Duties After Loss................................8-9
  Loss Settlement.........................................9-10
  Loss to a Pair or Set....................................10
  Glass Replacement.......................................10

Appraisal................................................................10
Other Insurance....................................................10
Suit Against Us.....................................................10
Our Option............................................................10
Loss Payment........................................................10
Abandonment of Property...................................10
Mortgage Clause..................................................10
No Benefit To Bailee...........................................10
Nuclear Hazard Clause...................................10-11
Recovered Property..............................................11
Volcanic Eruption Period....................................11
SECTION II - LIABILITY COVERAGES
  Coverage E Personal Liability......................11
  Coverage F Medical Payments to Others....11
SECTION II - EXCLUSIONS
  Coverage E Personal Liability and Coverage F
  Medical Payments to Others......................11-12
  Coverage E Personal Liability...................12-13
  Coverage F Medical Payments to Others....13
SECTION II - ADDITIONAL COVERAGES
  Claim Expenses............................................13
  First Aid Expenses.......................................13
  Damage to Property of Others................13-14
  Loss Assessment..........................................14
SECTION II - CONDITIONS
  Limit of Liability.........................................14
  Severability of Insurance............................14
  Duties After Loss....................................14-15
  Duties of an Injured Person......................15
  Payment of Claim.......................................15
  Suit Against Us............................................15
  Bankruptcy of an Insured..........................15
  Other Insurance..........................................15
SECTIONS I AND II - CONDITIONS
  Policy Period................................................15
  Concealment or Fraud.................................15
  Liberalization Clause...................................15
  Waiver or Change of Policy Provisions......15
  Cancellation............................................15-16
  Non-Renewal................................................16
  Assignment...................................................16
  Subrogation..................................................16
  Death.............................................................16
  *MUTUAL POLICY CONDITIONS................16

**Page**

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

## HOMEOWNERS 00 03 04 91

### AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

### DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

### SECTION I - PROPERTY COVERAGES

**COVERAGE A - Dwelling**

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

1

## COVERAGE B - Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE C - Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

    b. Is away from the "residence premises"; and

    c. Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances.

   This includes:

   a. Their equipment and accessories; or

   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

2

(1) Accessories or antennas; or

(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

## COVERAGE D – Loss Of Use

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

a. Your tree(s) felled by the peril of Windstorm or Hail;

b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

3

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a. Does not increase the limit of liability that applies to the covered property;

b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

**8. Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

b. Hidden decay;

c. Hidden insect or vermin damage;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

**9. Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other

household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

a. **Fire or lightning.**

b. **Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

c. **Explosion.**

d. **Riot or civil commotion.**

e. **Aircraft,** including self-propelled missiles and spacecraft.

f. **Vehicles.**

g. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

h. **Vandalism or malicious mischief.**

i. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

      (1) Maintain heat in the building; or

      (2) Shut off the water supply and drain the system and appliances of water;

   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (1) Fence, pavement, patio or swimming pool;

      (2) Foundation, retaining wall, or bulkhead; or

      (3) Pier, wharf or dock;

   c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   e. Any of the following:

      (1) Wear and tear, marring, deterioration;

      (2) Inherent vice, latent defect, mechanical breakdown;

      (3) Smog, rust or other corrosion, mold, wet or dry rot;

      (4) Smoke from agricultural smudging or industrial operations;

      (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

      (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pave-ments, patios, foundations, walls, floors, roofs or ceilings;

      (7) Birds, vermin, rodents, or insects; or

      (8) Animals owned or kept by an "insured."

      If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section I - Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

### COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. **Fire or lightning.**

6

2. **Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by an "insured";

b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured" except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption;

7

landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

(1) Fire;

(2) Explosion; or

(3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains or which overflows from a sump; or

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, re-pair, construction, renovation, remodel-ing, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

8

f. As often as we reasonably require:

   (1) Show the damaged property;

   (2) Provide us with records and documents we request and permit us to make copies; and

   (3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1) The time and cause of loss;

   (2) The interest of the "insured" and all others in the property involved and all liens on the property;

   (3) Other insurance which may cover the loss;

   (4) Changes in title or occupancy of the property during the term of the policy;

   (5) Specifications of damaged buildings and detailed repair estimates;

   (6) The inventory of damaged personal property described in 2.e. above;

   (7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   (8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

   (1) Personal property;

   (2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

   (3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

     (a) The limit of liability under this policy that applies to the building;

     (b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

     (c) The necessary amount actually spent to repair or replace the damaged building.

   (2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

     (a) The actual cash value of that part of the building damaged; or

     (b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

   (3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

     (a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest base-ment floor;

     (b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

     (c) Underground flues, pipes, wiring and drains.

   (4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

     (a) Less than 5% of the amount of insurance in this policy on the building; and

     (b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. Reach an agreement with you;

   b. There is an entry of a final judgement; or

   c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or un-controlled or however caused, or any consequence of any of these.

10

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

   c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

      (1) On an occasional basis if used only as a residence;

      (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      (3) In part, as an office, school, studio or private garage;

   d. Arising out of the rendering of or failure to render professional services;

   e. Arising out of a premises:

      (1) Owned by an "insured";

      (2) Rented to an "insured"; or

      (3) Rented to others by an "insured";

      that is not an "insured location";

   f. Arising out of:

      (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

      (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

      (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

11

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

    (a) Not owned by an "insured"; or

    (b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

    (a) Used to service an "insured's" residence;

    (b) Designed for assisting the handicapped; or

    (c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

    (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

    (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

    (c) One or more outboard engines or motors with 25 total horsepower or less;

    (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

    (e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

        (1) You acquire them prior to the policy period; and

        (a) You declare them at policy inception; or

        (b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

        (ii) You acquire them during the policy period.

        This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

    (a) Less than 26 feet in overall length;

    (b) 26 feet or more in overall length, not owned by or rented to an "insured."

(3) That are stored;

h. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an aircraft;

(2) The entrustment by an "insured" of an aircraft to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employees" employment by an "insured."

2. **Coverage E – Personal Liability,** does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

   (a) That directly relate to the ownership, maintenance or use of an "insured location"; or

   (b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

unless excluded in (1) above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

by the "insured" under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

(1) Is also an insured under a nuclear energy liability policy; or

(2) Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Under-writers;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others,** does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

(1) Occurs off the "insured location"; and

(2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

b. To any person eligible to receive benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

c. From any:

(1) Nuclear reaction;

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender,

or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

We will not pay for "property damage":

a. To the extent of any amount recoverable under Section I of this policy;

13

b. Caused intentionally by an "insured" who is 13 years of age or older;

c. To property owned by an "insured";

d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:

(1) A "business" engaged in by an "insured";

(2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

(3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. Loss Assessment. We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS.

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

(1) The identity of the policy and "insured";

(2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

(3) Names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

c. At our request, help us:

(1) To make settlement;

(2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

(3) With the conduct of suits and attend hearings and trials; and

(4) To secure and give evidence and obtain the attendance of witnesses;

14

d.  Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

e.  The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

**4.  Duties of an Injured Person - Coverage F - Medical Payments to Others.**

The injured person or someone acting for the injured person will:

a.  Give us written proof of claim, under oath if required, as soon as is practical; and

b.  Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**5.  Payment of Claim - Coverage F - Medical Payments to Others.**  Payment under this coverage is not an admission of liability by an "insured" or us.

**6.  Suit Against Us.**  No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured."  Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

**7.  Bankruptcy of an Insured.**  Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**8.  Other Insurance - Coverage E - Personal Liability.**  This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II -CONDITIONS

**1.  Policy Period.**  This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

**2.  Concealment or Fraud.**  The entire policy will be void if, whether before or after a loss, an "insured" has:

a.  Intentionally concealed or misrepresented any material fact or circumstance;

b.  Engaged in fraudulent conduct; or

c.  Made false statements;

relating to this insurance.

**3.  Liberalization Clause.**  If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**4.  Waiver or Change of Policy Provisions.**

A waiver or change of a provision of this policy must be in writing by us to be valid.  Our request for an appraisal or examination will not waive any of our rights.

**5.  Cancellation.**

a.  You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

b.  We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect.  This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(1)  When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2)  When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

(3)  When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(a)  If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

(b)  If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4)  When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

15

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

---

### *MUTUAL POLICY CONDITIONS

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class II.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

SECRETARY                    PRESIDENT

Includes copyrighted material of Insurance Services Office,
with its permission.
Copyright, Insurance Services Office, Inc., 1990

HO 04 53 04 91

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CREDIT CARD, FUND TRANSFER CARD, FORGERY AND
COUNTERFEIT MONEY COVERAGE**
**Increased Limit**

For an additional premium, the limit of liability for Additional Coverage 6., Credit Card, Fund Transfer Card,
Forgery and Counterfeit Money, is increased to $ _____ *.

*Entries may be left blank if shown elsewhere in this policy for this coverage.
All other provisions of this policy apply.

HO 04 53 04 91         Copyright, Insurance Services Office, Inc., 1990



# HOME PROTECTO R PLUS ENDORSEMENT

**A. INCREASED SPECIAL LIMIT OF LIABILITY - JEWELRY, WATCHES, FURS, PRECIOUS AND SEMI-PRECIOUS STONES**

Section I, Coverage C - Personal Property.  Special Limits of Liability.  Paragraph 5 is replaced with:

5.  Jewelry, watches, furs, precious and semi-precious stones are insured for accidental direct physical loss or damage.  The following exclusions and limitations apply:

    a.  $2500 for loss by theft, subject to a maximum of $1000 for any one article.

    b.  The limit of liability stated in the declarations page for Coverage C, for loss caused by perils named under Coverage C of this policy, other than theft.

    c.  $2500 for loss caused by perils not named and not excluded in this policy, subject to a maximum of $1000 for any article.

    d.  We do not cover loss or damage caused by mechanical breakdown, wear and tear, gradual deterioration, insects, vermin or inherent vice.

**B. REPLACEMENT COST PROVISION - DWELLING AND PERSONAL PROPERTY**

You must meet the following additional Section I Condition for this provision to apply:

17.  Additions or Changes to Dwelling - Notice to Company.  You must inform us within 90 days of the start of any additions, alterations or improvements to the dwelling that will increase the replacement cost of the dwelling by $5,000 or more.

If you meet Condition 17, then Section I, Condition 3, Loss Settlement, is deleted and replaced by the following:

3.  Loss Settlement.  Covered property losses are settled as follows:

    a.  The applicable limit of liability for Buildings under Coverage A or B is the replacement cost, after application of deductible and without deduction for depreciation, subject to the following:

        (1)  We will pay the cost of repair or replacement, but not exceeding:

            (a)  The replacement cost of that part of the building damaged using like construction on the same premises and intended for the same occupancy and use;

            (b)  With respect to Coverage A, an amount not exceeding 20% greater than the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

            (c)  With respect to Coverage B, the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

            (d)  The amount actually and necessarily spent to repair or replace the damage.

        (2)  We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.  Once actual repair or replacement is complete, we will settle the loss according to the provisions of a.(1) above.

        However, if the cost to repair or replace the damage is both:

            (a)  Less than 5% of the amount of insurance in this policy on the building; and

            (b)  Less than $2500;

We will settle the loss according to the provisions of a.(1) above whether or not actual repair or replacement is complete.

b. Awnings, outdoor antennas and outdoor equipment, whether or not attached to buildings, and structures that are not buildings; at actual cash value at the time of loss but not exceeding the amount needed to repair or replace.

c. Personal property, carpeting and household appliances: at replacement cost but not exceeding the amount needed to repair or replace subject to the following:

   (1) Our limit of liability for loss to Personal Property shall not exceed the smallest of the following:

       (a) Replacement cost with a similar item of like kind and quality at the time of loss;

       (b) The full cost of repair;

       (c) Any special limit of liability described in the policy or stated in this endorsement; or

       (d) The Coverage C limit of liability stated in the declarations, as modified by the Inflation Protection of the policy.

   (2) This endorsement shall not apply to:

       (a) Fine arts and items which, by their nature cannot be replaced with new items;

       (b) Articles whose age or history contribute substantially to their value including souvenirs or collector's items.

       (c) Property that is unusable for the purpose for which it was originally intended due to age or historic condition.

   (3) We will not pay for any loss to personal property under this endorsement until actual repair or replacement is complete.

d. You may disregard the replacement cost provision and make a claim for loss of or damage to property on an actual cash value basis and then make claim within 180 days after loss for additional liability under this endorsement.

## C. INCREASED LIMIT - COVERAGE D

We will pay the amount of loss covered by Coverage D which is actually sustained by you during the 12 consecutive months following the date of loss. subject to the periods of time under paragraphs 1, 2 and 3 of Coverage D - Loss of Use.

## D. ADDITIONAL COVERAGES

### REFRIGERATORS AND FREEZERS CONTENTS COVERAGE

We cover the contents of deep freeze or refrigerated units on the residence premises from the perils of:

1. Fluctuation or total interruption of electric power, either on or off premises, resulting from conditions beyond the control of the "insured".

2. Mechanical breakdown of any refrigeration equipment on premises including the blowing of fuses or circuit breakers.

We do not cover loss caused by the following additional exclusions:

1. Disconnection or termination of power due to turning off any switch.

2. Inability of power source to provide sufficient power due to government order, lack of fuel or lack of generating capacity to meet demand.

SPECIAL LIMIT - We will not pay more than $500 of your loss of refrigerator or freezer contents resulting from the above perils.

All other provisions of this policy apply.

### LOCK REPLACEMENT COVERAGE

We will pay up to $250 for replacing the locks or cylinders on the exterior doors of the residence premises when your keys have been stolen. The theft of the keys must be reported to the police for this coverage to apply.

This coverage is additional insurance. No deductible applies to this coverage.

HO 24 82 04 91

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL INJURY

For an additional premium, under Coverage B - Personal Liability, the definition "bodily injury" is amended to include personal injury.

"Personal injury" means injury arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment, or malicious prosecution;

2. Libel, slander or defamation of character; or

3. Invasion of privacy, wrongful eviction or wrongful entry.

Section II Exclusions do not apply to personal injury. Personal injury insurance does not apply to:

1. Liability assumed by the "insured" under any contract or agreement except any indemnity obligation assumed by the "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;

2. Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an "insured";

3. Injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the "insured";

4. Injury arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

5. Civic or public activites performed for pay by an "insured"; or

6. Injury to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

All other provisions of this policy apply.

HO 24  82 04 91          Copyright, Insurance Services Office, Inc., 1990

### Liberty Mutual Fire Insurance Company
### Notice of Membership in Liberty Mutual Holding Company Inc. and
### Notice of Annual Meeting

Your policy includes a statement regarding membership rights in Liberty Mutual Holding Company Inc. Liberty Mutual Fire Insurance Company is a Massachusetts stock insurance company subsidiary of Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. Insurance is provided by Liberty Mutual Fire Insurance Company. The named insured first named in the declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com, by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02117, Attention: Corporate Secretary.

2344                                                                                          PF

# AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY

*THIS ENDORSEMENT SUPERSEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - Dwelling
Item 1. is amended as follows:
We cover:
1.   The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

### COVERAGE C - Personal Property

The introductory paragraph of **Special Limits of Liability** is amended to read:

These do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.

The following limits are added:
12.  $5000 on electronic data processing system equipment and the recording or storage media or accessories used with that equipment.

13.  $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

14.  $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

15.  $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

### Property Not Covered under COVERAGE C - Personal Property

The final two subparagraphs of Item 3 (a. and b.) are replaced by the following:

We do not cover vehicles or conveyances not subject to motor vehicle registration which are:
a.   Used solely to service an "insured's" residence; or
b.   Designed for assisting the handicapped;

Item 10. is added as personal property items not covered.
10.  Water or steam

### ADDITIONAL COVERAGES is revised as follows:

Item 7.  **Loss Assessment** is deleted in its entirety.

The following is added to Item 8. **Collapse.**
With respect to this Additional Coverage:
(1)  Collapse means the sudden and entire falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied or used for its current intended purpose.
(2)  A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
(3)  A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.
(4)  A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Item 10. **Landlord's Furnishings** is deleted in its entirety.

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES
The following is added to item 2.b.
(4)  Footing(s)

The following are added to item 2.e. Any of the following:
(10) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
The final paragraph of Item 2. is further revised as follows:

If any of these cause sudden and accidental water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

## SECTION II - EXCLUSIONS

Item 1.a. under **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** is amended as follows:
Which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage"

   (1) is of a different kind, quality, or degree than initially expected or intended; or

   (2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

## SECTION II - ADDITIONAL COVERAGES

Item 1.c. under **Claims Expenses** is amended as follows:

Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit.

Item 4. **Loss Assessment** is deleted in its entirety.

All other policy terms and conditions apply.

# AMENDATORY SEEPAGE ENDORSEMENT
### This endorsement changes your policy.  Please read it carefully.

**SECTION I - PERILS INSURED AGAINST**

**Coverage A - Dwelling and Coverage B - Other Structures**

Paragraph 2.e. (9) is added:

    (9)  Seepage, meaning continuous or repeated seepage or leakage of water, steam or fuel over a period of weeks, months or years:

        a)  From a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or

        b)  From within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures, including walls, ceilings or floors.

FMHO 2265

PF

# WAIVER OF DEDUCTIBLE - THEFT FROM RESIDENCE PREMISES

With the installation of a complete burglar alarm, reporting to either a police station or a central station, we will waive the deductible that applies for direct physical loss to the property described under Coverage A, B, and C as a result of theft, including attempted theft, from that portion of the "residence premises" protected by the alarm system.

A complete burglar alarm covers at the minimum all exterior doors. A dwelling which meets the minimum for a complete burglar alarm is considered protected in its entirety.

The waiver of deductible will not apply if:

    a.   The alarm system has not been activated, or the service has been discontinued;

    b.   The theft loss occurs off the "residence premises"; or

    c.   The theft loss occurs from a portion of the "residence premises" not protected by the alarm system.

All other provisions of this policy apply.

FMHO 1087 (2/96)

PF

HO 04 16 04 91

## PREMISES ALARM OR
## FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises." You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

HO 04 16 04 91

Copyright, Insurance Services Office, Inc., 1990

# HOMEOWNER AMENDATORY ENDORSEMENT

## ..... THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY

*THIS ENDORSEMENT SUPERSEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

**DEFINITIONS**

The introductory paragraph of **Definitions** is amended to read:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and
  (1) the spouse of the "named insured" shown on the Declarations, if a resident of the same household; or
  (2) the partner in a civil union, registered domestic partnership, or similar union or partnership, with the "named insured" shown on the Declarations, if a resident of the same household.
Section (2), above, only applies if the civil union, registered domestic partnership or other similar union or partnership is validly entered into under the law of any state, territory or possession of the United States of America, any territory or province of Canada, or the equivalent of a state or province in any other country.
"We," "us" and "our" refer to the Company providing this insurance.  In addition, certain words and phrases are defined as follows:

**SECTIONS I AND II - CONDITIONS**

The introductory paragraph of **9. Death.** is amended to read:

If any person named in the Declarations or the spouse, if a resident of the same household; or the partner in a civil union, registered domestic partnership or similar union or partnership, if a resident of the same household, dies:

HO 04 96 04 91

# <u>NO</u> SECTION II - LIABILITY COVERAGES FOR
# HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I - PROPERTY COVERAGES FOR
# HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II - Exclusions;

2. Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item 8. imposes that limit on "business" property on the "residence premises." (Item 8. corresponds to item 5. in Form HO 00 08.);

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item 9. imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item 9. does not apply to adaptable electronic apparatus as described in Special Limit of Liability items 10. and 11. (Items 9., 10. and 11. correspond to items 6., 7. and 8. respectively in Form HO 00 08.)

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

HO 04 96 04 91          Copyright, Insurance Services Office, Inc., 1990



# LEAD POISONING EXCLUSION ENDORSEMENT

The following provisions are added to and made part of your Homeowners Policy:

Section I - Property Coverages do not apply to any costs or expenses incurred or loss arising out of:

1. the removal, testing for, monitoring, clean-up, abatement, treatment, or neutralization of lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead, or;

2. any governmental direction or other request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:

1. arising out of lead paint, plaster or putty containing lead; soil or earth containing lead or any other material or substance containing lead, or;

2. any costs or expenses incurred or loss arising out of any claim, governmental direction, or request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

This exclusion applies to any obligation to share damages, costs or expenses with someone else or to repay someone else who must pay damages, costs or expenses.

FMHO 976 (Ed. 5-92)          **LIBERTY MUTUAL GROUP**                    PF

**HOMEOWNERS**
**HO 01 23 10 94**

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS - MISSISSIPPI

**SECTION I - PROPERTY COVERAGES**

**COVERAGE C - Personal Property**

**Special Limits of Liability**

Items 10. and 11. are deleted and replaced by the following:

**10.** $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

   **a.** Accessories or antennas; or

   **b.** Tapes, wires, records, discs or other media; for use with any electronic apparatus described in this item 10.

**11.** $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

   **a.** Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

   **b.** Is away from the "residence premises"; and

   **c.** Is used at any time or in any manner for any "business" purpose.

  Electronic apparatus includes:

   **a.** Accessories and antennas; or

   **b.** Tapes, wires, records, discs or other media; for use with any electronic apparatus described in this item 11.

**Property Not Covered**

Item 3.b. is deleted and replaced by the following:

**3.** Motor vehicles or all other motorized land conveyances. This includes:

   **b.** Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

     **(1)** Accessories or antennas; or

     **(2)** Tapes, wires, records, discs or other media for use with any electronic apparatus described in this item 3.b.

   The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

    **a.** Used to service an "insured's" residence; or

    **b.** Designed for assisting the handicapped;

**COVERAGE D - Loss of Use**

Item 1 is deleted and replaced by the following:

**1.** If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

  Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**ADDITIONAL COVERAGES**

**9.** Glass or Safety Glazing Material is deleted and replaced by the following:

**9. Glass or Safety Glazing Material**

  **a.** We cover:

    **(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

    **(2)** The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and

    **(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this ADDITIONAL COVERAGE 8. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For forms HO 00 01 and HO 00 08, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is ADDITIONAL COVERAGE 8. in forms HO 00 01 and HO 00 08.)

The following ADDITIONAL COVERAGE is added to all forms except HO 00 06. With respect to form HO 00 04, the words 'covered building' used below, refer to property covered under ADDITIONAL COVERAGE 10. Building Additions and Alterations.

**11. Ordinance or Law**

**a.** You may use up to 10% of the limit of liability that applies to COVERAGE A (or for form HO 00 04, you may use up to 10% of the limit of liability that applies to Building Additions and Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a PERIL INSURED AGAINST;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a PERIL INSURED AGAINST to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a PERIL INSURED AGAINST.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

**c.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is ADDITIONAL COVERAGE 10. in forms HO 00 01 and HO 00 06.)

**SECTION I - EXCLUSION**

**1.** Ordinance or Law is deleted and replaced by the following:

**1.** Ordinance or Law, meaning any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion 1.a. does not apply to the amount of coverage that may be provided for under ADDITIONAL COVERAGES, Glass or Safety Glazing Material or Ordinance or Law;

**b.** The requirements of which result in a loss in value to property; or

Copyright, Insurance Services Office, Inc., 1994

HO 01 23 10 94

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is exclusion 1.a. in form HO 00 03.)

2. **Earth Movement** is deleted and replaced by the following:

2. **Earth Movement**, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

   a. Fire; or

   b. Explosion;

   ensues and then we will pay only for the ensuing loss.

   (This is exclusion 1.b. in form HO 00 03.)

4. **Power Failure** is deleted and replaced by the following:

4. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the "residence premises." But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the "residence premises," we will pay for the loss or damage caused by that PERIL INSURED AGAINST.

   (This is exclusion 1.d. in form HO 00 03.)

**SECTION I - CONDITIONS**

3. **Loss Settlement.** Under form HO 00 06, item b.(2) is deleted and replaced by the following:

   (2) If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

12. **Mortgage Clause.** This clause is amended as follows:

    The sentence "If we decide to cancel or not renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect." is deleted and replaced by the following:

    If we decide to cancel or not to renew this policy, the mortgagee will be notified:

    a. At least 30 days before the date cancellation takes effect; or

    b. At least 10 days before the date nonrenewal takes effect.

**SECTION II - EXCLUSIONS**

Under 1. COVERAGE E - Personal Liability and COVERAGE F - Medical Payments to Others, item a. is deleted and replaced by the following:

   a. Which is expected or intended by one or more "insureds";

**SECTIONS I AND II - CONDITIONS**

2. **Concealment or Fraud** is deleted and replaced by the following:

2. **Concealment or Fraud**

   a. Under SECTION I - PROPERTY COVERAGES, with respect to all "insureds" covered under this policy, we provide no coverage for loss under SECTION I - PROPERTY COVERAGES if, whether before or after a loss, one or more "insureds" have:

      (1) Intentionally concealed or misrepresented any material fact or circumstance;

      (2) Engaged in fraudulent conduct; or

      (3) Made false statements;

      relating to this insurance.

   b. Under SECTION II - LIABILITY COVERAGES, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

      (1) Intentionally concealed or misrepresented any material fact or circumstance;

      (2) Engaged in fraudulent conduct; or

      (3) Made false statements;

      relating to this insurance.

5. **Cancellation.** Paragraph b.(2) is deleted and replaced by the following:

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

All other provisions of this policy apply.

**AMENDATORY MOLD, FUNGUS, WET ROT, DRY ROT, BACTERIA, OR VIRUS ENDORSEMENT**
**This endorsement changes your policy. Please read it carefully.**

**DEFINITIONS**
The following definition is added:

9. **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** means any type or form of fungus, rot, virus or bacteria. This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or viruses.

**SECTION I – PROPERTY COVERAGES**
**Additional Coverages**
The following Additional Coverage is added:

11. **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**
    a. **$10,000** is the most we will pay for:
       (1) The total of all loss payable under Section I - Property Coverages caused by **"mold, fungus, wet rot, dry rot, bacteria, or virus"**;
       (2) The cost to remove **"mold, fungus, wet rot, dry rot, bacteria, or virus"** from property covered under Section I;
       (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the **"mold, fungus, wet rot, dry rot, bacteria, or virus"**; and
       (4) The cost of testing of air or property to confirm the absence, presence or level of **"mold, fungus, wet rot, dry rot, bacteria, or virus"**, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "mold, fungus, wet rot, dry rot, bacteria, or virus."

    b. The coverage described in 11.a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

    c. The $10,000 for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:
       a) Number of locations insured under this endorsement; or
       b) Number of claims made.

    d. If there is covered loss or damage to covered property, not caused, in whole or in part, by **"mold, fungus, wet rot, dry rot, bacteria, or virus"**, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that **"mold, fungus, wet rot, dry rot, bacteria, or virus"** causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This Additional Coverage does not increase the limit of liability under Section I of the policy.

**SECTION I – EXCLUSIONS**
Exclusion 1.l. is added:

l. Except as provided by **Additional Coverage 11.**, damage caused by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** is excluded, even if resulting from a peril insured against under Section I.

**SECTION II - CONDITIONS**
Condition 1. **Limit of Liability** is deleted and replaced by the following:

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

   However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with exposure to, existence of, or presence of any **"mold, fungus, wet rot, dry rot, bacteria, or virus"** will not be more than the Section II Coverage E Aggregate Sublimit of Liability for "mold, fungus, wet rot, dry rot, bacteria, or virus." That sublimit is $50,000. This is the most we will pay regardless of the:
   a) Number of locations insured under the policy to which this endorsement is attached;
   b) Number of persons injured;
   c) Number of persons whose property is damaged;

d) Number of "insureds"; or

e) Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "mold, fungus, wet rot, dry rot, bacteria, or virus" described in 1. Limit of Liability of this endorsement, Condition 2. Severability of Insurance is deleted and replaced by the following:

2. **Severability of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II Conditions 1. Limit of Liability. This condition will not increase the limit of liability for this coverage.

*This endorsement takes precedence over all other endorsements attached to this policy. All other provisions of the policy apply.*



## UNDERGROUND FUEL STORAGE TANK EXCLUSION

The following provision is added to and made part of your Homeowners Policy:

Section II - Exclusions

The Paragraph below is added:

**Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to "bodily injury" or "property damage":**

arising out of the release of fuel or fuel products from an "underground storage tank system."

"Underground storage tank system" means the underground tank, the fill pipe, the vent pipes, and all associated fixtures, including pipe and tubing which contains or conveys fuel or fuel products from the underground storage tank to the point of combustion.

All other provisions of this policy apply.

FMHO 1097 (Ed. 1-97)                    Liberty Mutual Group                                    PF

# INFLATION PROTECTION ENDORSEMENT

It is agreed that the limits of liability for:

Coverage A, Dwelling;

Coverage B, Structure;

Coverage C, Personal Property;

and Coverage D, Loss of Use,

shall be raised by the rate of increase in the latest available information on residential building cost inflation.

**METHOD**

To find the limits of liability on a given date, the Index Level the Company assigns to that date will be divided by the Index Level for the effective date of this Endorsement. This Factor is then multiplied by the limit for Coverages A, B, C and D separately.

If during this policy's term the Coverage A limit is changed at the insured's request, the effective date of this Endorsement is amended to the effective date of such change.

This Endorsement shall not reduce the limits of liability to less than the amount shown on:

    a.  The policy; or

    b.  The most recent Homeowners Policy Renewal Declaration.

This Endorsement must be attached to Change Endorsement when issued after the policy is written.

FMHO 2835 (Ed. 11/03)        Liberty Mutual Insurance Group        Page 1 of 1

HO 04 94 04 91

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WINDSTORM OR HAIL EXCLUSION

For a premium credit, we do not insure for loss caused directly or indirectly by windstorm or hail. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

Direct loss by fire or explosion resulting from windstorm or hail damage is covered.

This exclusion does not apply to Coverage D - Loss of Use.

All other provisions of this policy apply.

HO 04 94 04 91

Copyright, Insurance Services Office, Inc., 1990